Filed 1/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VICTORIA FERNANDEZ, | B283949 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC606183) |
| v. | |
| CHARLES ALEXANDER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert B. Broadbelt, Judge.  Affirmed.

Curd, Galindo & Smith, Tracy Labrusciano and Alexis Galindo for Plaintiff and Appellant.

Kjar, McKenna & Stockalper and Ryan P. Deane for Defendant and Respondent.

_____

**SUMMARY**

Plaintiff Victoria Fernandez sued defendant Charles Alexander, an orthopedic surgeon, for medical malpractice in connection with his treatment of her fractured wrist. The substance of her claim was that defendant failed to recommend, encourage and perform surgery on plaintiff's wrist, instead ordering a cast, and this course of treatment increased the severity of the injury to plaintiff's wrist.

Defendant moved for summary judgment. The trial court found triable issues of material fact on the standard of care. But, because plaintiff's expert did not explain the basis for, or state any facts or reasons to support, his opinion that defendant's conduct caused plaintiff's injury, the trial court granted summary judgment.

We affirm the judgment.

**FACTS**

**1. Plaintiff's Fractured Wrist and Treatment**

Plaintiff fell and fractured her left wrist on November 7, 2014. At an emergency room, an X-ray was taken and plaintiff's hand was placed in a splint cast. Plaintiff was referred to her primary physician, who in turn referred her to defendant.

Plaintiff's daughter accompanied her to see defendant on November 17, 2014. Defendant examined plaintiff's wrist and noted soft tissue swelling, tenderness and decreased range of motion. Defendant examined the X-rays plaintiff brought with her; they showed "an impacted distal radius fracture with dorsal angulation." Defendant opened the X-ray images on a computer and described them to plaintiff. He assessed plaintiff with "left distal radius fracture and left ulnar styloid fracture."

2

The parties disagree on the extent of any discussion of surgery as a treatment option, but it is undisputed that defendant recommended placing the wrist in a cast, and his physician's assistant, Daniel Rivas-Tejeda, did so. Plaintiff was provided with pain medication and instructed to return in three weeks.

On December 8, 2014, plaintiff went to defendant's office and was treated by Mr. Rivas-Tejeda, who removed the cast and examined the patient's hand. (Defendant was not present.) When the cast was removed, plaintiff's hand looked deformed. (Plaintiff's daughter testified that her wrist looked "still swollen" and "[s]lightly malformed," "[j]ust a little to the right." Mr. Rivas-Tejeda said that "[i]t looks a little off," and "mention[ed] that a brace would help with that.") X-rays were taken that showed "some callous formation with dorsal angulation of hand."[1] Plaintiff's wrist was placed in a "freedom splint," physical therapy was prescribed, and plaintiff was instructed to return in six weeks. Plaintiff underwent physical therapy visits between December and January 23, 2015 "that helped somewhat."

Plaintiff visited defendant's office for the third and last time on January 23, 2015. Defendant examined plaintiff and made notes on the condition of plaintiff's wrist. (These observations are undisputed; they are incomprehensible to the

---

[1] Mr. Rivas-Tejeda's examination "showed positive STS of the dorsal hand and wrist with decreased range of motion of the MCP secondary to swelling and immobilization and sensation was intact."

3

lay reader, but apparently the condition was not good.)[2] According to Norma Fernandez, defendant was "visibly concerned and a little surprised at how [the hand] was," and called the office of plaintiff's physical therapist. Ms. Fernandez's impression was that defendant "wanted to make sure they were doing the right types of things." Defendant said "something to the effect that the way her hand looked wasn't important, what was important was getting the function back in her hand." Plaintiff was instructed "to use alternating heat and ice and it was noted that if there was no improve[ment] ORIF [open reduction and internal fixation, a surgical procedure] could be considered."

Plaintiff did not return to defendant for any further treatment. Eight months later, in October 2015, Dr. Milan Stevanovic performed a surgical procedure involving a bridge plate,[3] and in January 2016 he performed a further procedure to remove the plate and screws.

## 2. The Complaint

Plaintiff filed this lawsuit in January 2016. The operative first amended complaint alleged a single cause of action for

---

[2] Defendant noted: "MCP 2-5 70-80 degrees, PIP 45 degrees plus or minus, Supination 20 degrees and pronation full." X-ray imaging showed "a distal radius slightly medially deviated," and defendant noted plaintiff "had stiffness with questionable mild RSD."

[3] This was "a corrective open osteotomy of the left distal radius and attempted fixation of the left distal radius osteotomy site with attempted placement of a hand denervation plate and fixation with a bridge plate." Dr. Stevanovic noted that "fixation could not be achieved on the volar side due to the patient's soft and poor bone quality."

4

professional negligence against defendant and Mr. Rivas-Tejeda. The complaint alleged that the X-rays taken on December 8, 2014 showed "a positive ulnar variance." Further diagnostic testing in February 2015 (after plaintiff's final visit to defendant) "continued to show a distal fracture but now with displacement and dorsal angulation. The left ulnar styloid also continued to show as a fracture," and "the left wrist now suffered from edema and ligamentous injury."

The complaint alleged defendants "failed to inform or advise[] [plaintiff] that she could suffer and incur a permanent left wrist injury including the dorsal angulation and ligament damage as a result of their treatment." Further, she "did not consent to [defendants'] poor casting of the left wrist." Defendants "breached their legal duty . . . when the left wrist was casted in an improper manner."

### 3.     The Motion for Summary Judgment

#### a.     Defendant's evidence

Defendant moved for summary judgment in March 2017, contending that defendant's treatment was within the standard of care, and that no act or omission on defendant's part caused or contributed to plaintiff's injuries.[4]

---

[4]     Mr. Rivas-Tejeda filed a separate motion for summary judgment, and a hearing was held on June 5, 2017, a few days after the hearing on defendant's motion. Plaintiff filed no opposition and no appearance was made on her behalf at the hearing. The court found Mr. Rivas-Tejeda met his burden of proof "by showing that two elements of that claim (breach of duty and causation) cannot be established." Plaintiff makes no claim of error concerning the judgment in favor of Mr. Rivas-Tejeda.

Defendant submitted a declaration from Dr. Charles T. Resnick, a board-certified orthopedic surgeon specializing in hand and wrist surgery. Dr. Resnick reviewed plaintiff's medical records, the imaging of plaintiff's wrist, the depositions of plaintiff and her daughter, and discovery responses to interrogatories and other discovery requests by the parties. Dr. Resnick opined that the medical care and treatment rendered by defendant and Mr. Rivas-Tejeda complied with the applicable standard of care at all times; that the standard of care permitted either the performance of surgery and/or casting; that plaintiff was properly advised of her treatment options; that defendant supervised Mr. Rivas-Tejeda in keeping with the standard of care; and that plaintiff did not suffer any adverse complications during the casting.

Dr. Resnick further opined that "nothing [defendant and/or Mr. Rivas-Tejeda] did or failed to do caused plaintiff any harm or injury. The callous formation and dorsal angulation of the patient's hand seen on imaging on 12-8-14 was a potential outcome of both casting and/or surgical intervention. [Plaintiff] understood that casting her hand could result in continued hand deformity and the patient agreed to proceed with casting after receiving an informed consent of her options."[5]

b.    **Plaintiff's opposition**

Plaintiff opposed defendant's motion, contending that defendant "failed to supervise Mr. Rivas-Tejeda"; failed to X-ray

---

[5]    Plaintiff testified defendant told her that "whether they did surgery or whether they put [her] hand in a cast, that it [the hand] would not end up the same," and when she agreed to the casting, she "understood at that time that [her] hand would not be the same, that it would be bent a little bit down."

6

plaintiff's wrist on her first visit to his office (instead he used the X-ray she brought with her that had been done on the day she fell, 10 days earlier); and "failed to recommend, encourage and failed to perform surgery to Plaintiff's left wrist," instead ordering a cast to be placed on her wrist, all of which "were a breach of the standard of care which caused further injury to Plaintiff's hand."

Plaintiff did not file any objections to the admission of Dr. Resnick's expert declaration. Plaintiff submitted a declaration from Dr. Robert Gelb, also an experienced orthopedic surgeon with a sub-specialty in hand surgery. Dr. Gelb reviewed various medical records and the depositions of plaintiff, defendants, and Norma Fernandez (plaintiff's daughter). Dr. Gelb observed that defendant "failed to perform a new X-ray of the left hand," and opined that the standard of care "requires that an X-ray be taken when there is a displaced fracture to assess any movement in the displacement and to provide the patient with treatment options."

Dr. Gelb further opined that, "[b]ased on the Plaintiff's condition, the standard of care required [defendant] to discuss and recommend surgical intervention for the open repair with internal fixation [ORIF] of the left wrist to correct the displacement. Instead [defendant] ordered that the Plaintiff's left hand be casted." Again on plaintiff's second visit, when the cast was removed and X-rays revealed plaintiff's "angulation and deformity had worsened," the "failure to discuss surgical treatment options was a breach of the standard of care. On December 8, 2014 [defendant's] medical records appear to just accept the deformity to Plaintiff's left wrist with no attempt to surgically repair the deformity." Dr. Gelb concluded:

7

"Based on my review of the above-listed records, and on my own education, training, and experience, it is my professional opinion based on a reasonable degree of medical probability that the care and treatment rendered by both [defendant] and his [physician's assistant] Daniel Rivas-Tejeda fell below the standard of care and caused Plaintiff's further deformity of her left wrist.  [Defendant] and Daniel Rivas-Tejeda both failed to obtain an informed consent by the Plaintiff indicating that [defendant] discussed all of the treatment options, including surgical intervention.  [Defendant] and his [physician's assistant] both failed to obtain an X-ray on November 17, 2014 at the initial examination of Plaintiff's left wrist when the left wrist had suffered a displaced fracture with deformity.  [Defendant] failed to monitor the plaintiff's condition and just accepted the deformity."

### c.    Defendant's reply

Defendant's reply to plaintiff's opposition argued that deposition testimony from plaintiff's daughter showed that surgery was discussed as an option, and Dr. Gelb's opinion was "founded on incorrect inferences" and therefore flawed.[6] Defendant further argued Dr. Gelb's causation conclusions were "unmoored from factual underpinnings."

Defendant filed a single objection to Dr. Gelb's declaration, stating:  "Dr. Gelb's causation opinions fail to create a triable

---

[6]    Norma Fernandez testified that defendant "expressed it [surgery] was one option of two," but she could not recall "the specifics."  (She also testified that defendant "more strongly emphasized a cast option versus the surgery option," and ultimately it was defendant's decision to choose the casting option, not plaintiff's decision.)

issue of material fact.  As such, [defendant] objects to the entire Declaration."

Defendant's objection stated Dr. Gelb's declaration was "improper expert witness testimony in that Dr. Gelb has provided no basis for the opinion he provides within his Declaration. Thus, Dr. Gelb's entire Declaration lacks foundation and is irrelevant for the purpose for which it is being offered, which is whether or not recommending the surgery on 11-17-14 and/or 12-8-14 would have changed the outcome.  [¶]  Dr. Gelb's Declaration is conclusory . . . in that he does not state the reason(s) for which he opined that, 'to a reasonable degree of medical probability that the care and treatment rendered by [defendant] caused Plaintiff's further deformity of her left wrist.' " And:  "Dr. Gelb's Declaration is conclusory, speculative, and lacks foundation . . . as he does not provide a basis for his opinions. Dr. Gelb's Declaration does not dispute Dr. Resnick's analysis or opinions, namely that 'the callous formation and dorsal angulation of the patient's hand seen on imaging on 12-8-14 was a potential outcome of both casting and/or surgical intervention' . . . .  Therefore, Dr. Gelb's conclusory allegations will not suffice to raise a triable issue of fact as to causation."

### d.    The trial court's ruling

The trial court overruled defendant's evidentiary objection to the entire declaration of Dr. Gelb, but granted defendant's motion for summary judgment.  The court found defendant's evidence showed plaintiff could not establish two elements of her claim – breach of duty and causation.  And, while plaintiff produced sufficient evidence to raise a triable issue of material fact as to whether defendant complied with the standard of care, plaintiff did not meet her burden of producing evidence that

9

defendant's acts or omissions were a substantial factor in causing plaintiff harm. The court found Dr. Gelb's opinion on causation was "conclusory and speculative, and lacks a proper foundation because his declaration does not explain the basis for, or state any facts or reasons to support, his opinion on that issue."

The trial court entered judgment in defendant's favor, and plaintiff filed a timely notice of appeal.

## DISCUSSION

### 1. The Standard of Review

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542 (*Perry*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.) It is no longer called a "disfavored" remedy. "Summary judgment is now seen as a 'particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry,* at p. 542.) On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v.*

*L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037, citations omitted (*Yanowitz*).)

## 2. Contentions and Conclusions

Plaintiff contends defendant's alleged failure to correctly assess and properly treat plaintiff's injury "increased the severity of her displaced fracture at a critical time for surgical intervention, caused a delay in surgical intervention, and adversely affected her overall healing and ability to respond to the later-performed corrective procedures by Dr. Stevanovic." Plaintiff contends that defendant "failed to carry his burden of production on causation," and even if defendant met that burden, Dr. Gelb's declaration "refutes Dr. Resnick's assertions on causation."

We disagree with both contentions.

### a. The relevant principles

We begin with a prefatory note. The only issue on appeal involves the element of causation. The trial court found, and we agree, that material fact issues existed concerning the standard of care (breach of duty). For example, testimony from plaintiff and her daughter disputed defendant's discovery responses on the issue whether defendant explained the risks and benefits of surgery as a potential option for treatment. And, the experts contradicted each other: Dr. Resnick concluded the standard of care permitted either the performance of surgery and/or casting, while Dr. Gelb concluded the standard of care required defendant "to discuss and recommend surgical intervention . . . to correct the displacement." Thus we are left with the causation issue.

The general principles on expert testimony are not in dispute. As we have said in the past, "[a]n expert declaration is admissible to support or defeat summary judgment if the expert's

11

testimony would be admissible at trial in accordance with Evidence Code section 720.  An expert may testify to an opinion on a subject 'that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'  (Evid. Code, § 801, subd. (a).)" (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 (*Bozzi*).)

"When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary."  (*Bozzi, supra,* 186 Cal.App.4th at pp. 761-762, citing *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [plaintiff's experts in medical malpractice case did not create material dispute by stating it was " 'more probabl[e] than not' "that plaintiff's injury resulted from trauma during surgery without explanation or facts other than assumed facts for which no evidence was presented].)  "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi,* at p. 761.)

"The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed.  [Citation.]  This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration.  Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Bozzi, supra,* 186 Cal.App.4th at p. 761.)

### b.    Dr. Resnick's declaration

As indicated earlier, Dr. Resnick opined on the causation issue, stating: "It is further my opinion that nothing [defendant and/or Mr. Rivas-Tejeda] did or failed to do caused plaintiff any harm or injury.  The callous formation and dorsal angulation of the patient's hand seen on imaging on 12-8-14 was a potential outcome of both casting and/or surgical intervention."

Plaintiff contends Dr. Resnick's opinion on causation was conclusory, speculative, and "specious at best," and defendant "failed to carry his burden of producing evidence demonstrating that there was no triable issue of material fact as to causation." Plaintiff is mistaken.

First, plaintiff did not object to Dr. Resnick's declaration, or any part of it, in the trial court.  Nor did plaintiff contend in her opposition papers that defendant had failed to carry his burden of producing evidence on any issue.  Plaintiff merely argued that from the evidence she recited, "the trier of fact can determine whether [defendant] acted appropriately or breached his duty and caused Plaintiff's injury" by failing to X-ray plaintiff's wrist on her initial visit and failing to recommend surgery.  As noted above, this court considers all the evidence " ' "except that to which objections were made and sustained." ' " (*Yanowitz, supra,* 36 Cal.4th at p. 1037.)  It is thus far too late for plaintiff to object to Dr. Resnick's declaration.

Second, plaintiff is in any event mistaken.  She complains that Dr. Resnick "cites to no authority" for the proposition that the callous formation and dorsal angulation of plaintiff's hand was a potential outcome of both treatments (casting and surgery), and does not explain "the statistical likelihood" of that outcome with casting and with surgery.  But Dr. Resnick is himself an

13

authority on orthopedic surgery, with "extensive education, training, and experience, [and] years as a practicing board certified orthopedic surgeon specializing in hand and wrist surgery." And we are directed to no authority requiring statistical studies to support an opinion that is based on an expert's extensive practical experience in the relevant field.

Plaintiff also asserts Dr. Resnick's opinion that "callous formation and dorsal angulation" was a potential outcome of both treatments "is irrelevant as a 'medical possibility,' " because there can be " 'an infinite number of[] possible circumstances which can produce an injury,' " quoting *Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 702. So far as we can see, plaintiff's assertion is a non sequitur, and her citation to *Simmons* in inapt. *Simmons* discussed the "obvious distinction between a reasonable medical probability and a medical possibility" in a wrongful birth case, where it was undisputed that a particular test would have provided only a 20 percent chance of uncovering the plaintiff's risk of giving birth to a child with Down's Syndrome. (*Ibid.* ["[a] mere 20 percent chance does not establish a 'reasonably probable causal connection' [citation] between defendants' negligent failure to provide [the test] and plaintiffs' injuries"].)

Here, Dr. Resnick opined, based on his extensive experience as an orthopedic surgeon, that what happened to plaintiff's wrist was a potential outcome of both treatments. This satisfied defendant's burden to make a prima facie showing that plaintiff cannot establish that failure to recommend the surgery option aggravated the injury to plaintiff's wrist.

### c.    Dr. Gelb's declaration

That brings us to the pertinent question:  did plaintiff "produce a competent expert declaration to the contrary" (*Bozzi, supra,* 186 Cal.App.4th at pp. 761-762) on the causation issue? While Dr. Gelb was plainly competent to opine on the issue, it is equally plain that he did not do so in the manner required for the admissibility of an expert opinion.

" '[W]hen an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an "expert opinion is worth no more than the reasons upon which it rests." ' " (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155 (*Sanchez*).)  "Regarding causation, 'the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury.' " (*Ibid.*)

We have already described Dr. Gelb's declaration.  (See part 3.b. of the facts, *ante,* at pp. 7-8.)  On the causation issue, he simply stated that, based on the records and his training and experience, his opinion, based on a reasonable degree of medical probability, was that defendant's care and treatment "caused Plaintiff's further deformity of her left wrist."  Dr. Gelb then refers to defendant's failure to obtain an informed consent indicating he discussed all of the treatment options, failed to obtain a new X-ray at his initial examination of plaintiff's wrist, failed to monitor the plaintiff's condition and "just accepted the deformity."  None of this explains, for example, how the failure to

15

obtain a new X-ray at the initial consultation caused the further deformity in plaintiff's wrist, or how the failure to discuss surgery at the initial consultation caused the further deformity shown by the imaging at the second consultation.

Notably, Dr. Gelb does not opine that surgery would have produced a better outcome. Dr. Gelb's declaration does not challenge or even address Dr. Resnick's opinion that what happened to plaintiff's hand (the callous formation and dorsal angulation) was a potential outcome of both treatments. In short, Dr. Gelb offered no "reasoned explanation connecting the factual predicates to the ultimate conclusion" (*Sanchez, supra,* 8 Cal.App.5th at p. 156), and that is the very definition of a "purely conclusory" opinion.[7]

Plaintiff nonetheless contends it is reasonable "to infer . . . that Dr. Gelb opined that the failure of [defendant] to recommend surgery" on plaintiff's first and second visits "were substantial factors in causing the Plaintiff's harm." According to plaintiff, we may further infer from the worsening of the deformity that it "could only be remedied by surgical intervention due to the severity of the fracture." We may also infer, plaintiff says, that because the deformity worsened while her wrist was in the cast, "it is medically probable that another cause of the Plaintiff's harm was improper casting." But Dr. Gelb's opinion actually

---

[7] Plaintiff points out the trial court found Dr. Gelb's declaration on causation was "conclusory and speculative, and lacks a proper foundation," and yet the court overruled defendant's evidentiary objection based on the same grounds. We understand the court to have overruled defendant's objection to the "entire Declaration" of Dr. Gelb, rather than to particular portions of it, since the declaration established the existence of material disputes on the standard of care.

16

says none of those things (except that the deformity had worsened).

We agree with plaintiff that she "is entitled to all favorable inferences that may reasonably be derived from [Dr. Gelb's] declaration" (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 607), and "the rule [is] that . . . we liberally construe the declarations for the plaintiff's experts." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125-126; see also *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189 ["a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial"].)  But these principles in no way eliminate the need for some form of "reasoned explanation," and it remains the case that any inferences must "reasonably be derived from" the declaration.

Here, the inferences plaintiff suggests cannot "reasonably be derived" from a barebones statement that defendant's treatment "caused plaintiff's further deformity."  Doing so would be the antithesis of the principle that an expert opinion on causation must include "a reasoned explanation connecting the factual predicates to the ultimate conclusion." (*Sanchez, supra,* 8 Cal.App.5th at p. 156.)

Because plaintiff presented no admissible evidence to controvert defendant's evidence that causation cannot be established, defendant's motion for summary judgment was properly granted.

17

## DISPOSITION

The judgment is affirmed.  Defendant is to recover his costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:



STRATTON, J.



WILEY, J.