Filed 11/21/25 Romero v. The F.A. Barlett Tree Expert Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| CESAR ROMERO, | B331894, B333676 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV14689) |
| v. | |
| THE F.A. BARTLETT TREE EXPERT COMPANY, | |
| Defendant and Respondent. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Margaret L. Oldendorf and Edward B. Moreton, Jr., Judges. Affirmed.

Cesar Romero in pro. per., for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter and Nikhil P. Pole, for Defendant and Respondent.

———————————

In 2021, Cesar Romero's next-door neighbors hired The F.A. Bartlett Tree Expert Company (Bartlett) to trim a row of cypress trees along the border of Romero's property, as well as branches from Romero's eucalyptus tree that were overhanging their property. Romero sued, claiming Bartlett trespassed on his property and negligently trimmed the trees. He now appeals (case No. B331894) from a judgment entered in Bartlett's favor after it successfully moved for summary judgment. Concluding there is no error, we affirm.

Romero also appeals (case No. B333676) an order denying his motion to tax costs. He contends the court erred by including discovery sanctions in Bartlett's cost award. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Tree Trimming and Romero's Lawsuit*

In February 2021, while Romero and his wife were out of town, their neighbors, Kristine Chase and Andrew Van Horn (collectively, the neighbors) hired Bartlett to trim trees. Bartlett trimmed a row of cypress trees (also referred to by the parties as "arborvitae") between the properties as well as branches from a eucalyptus tree whose trunk was on Romero's property.[1] After the work was completed, a Bartlett employee briefly stepped onto Romero's driveway to ensure that any clippings were removed.

---

[1]  In his complaint, Romero also alleges Bartlett improperly trimmed Romero's Brazilian pepper trees. However, Romero makes no mention of the pepper trees in his opening brief. Although he twice references the pepper trees in passing in his reply brief, "we do not consider arguments raised for the first time in a reply brief." (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 657.)

Romero sued Bartlett for the wrongful cutting of trees, trespass, negligence, res ipsa loquitur negligence, nuisance, theft under Penal Code section 496, conversion, and recovery on a contractor's license bond.

B.    *Bartlett's Motion for Summary Judgment*

In December 2022, Bartlett moved for summary judgment. It argued Romero's claims failed because the cypress trees stood entirely on the neighbors' property, and Bartlett trimmed only dead or dying eucalyptus branches that overhung onto the neighbors' side.  It additionally argued the trespass claim failed because Romero suffered no harm and, even if there were a *de minimis* trespass to check for debris, it was privileged by private necessity.  Bartlett contended the negligence claim failed because Romero could not establish the elements of breach of duty, causation, or damages, and Bartlett challenged the "res ipsa loquitor" claim because res ipsa loquitor is an evidentiary doctrine, not a standalone cause of action.  Finally, Bartlett asserted the claim for recovery on a contractor's bond was not viable because Romero could not establish a triable issue that Bartlett's employees were unqualified or performed the job in a negligent manner.

Bartlett submitted a certified survey line verification from Peter Martin, a civil engineer licensed by the State of California to conduct land surveys.  Martin indicated he verified the location of the property line between the two properties as recorded in the Record of Survey[2] filed in the Los Angeles County Recorder's

---

[2]    A record of survey is a map documenting a field survey done in conformance with land surveying practices by a licensed

3

Office. He retraced the subject survey and found it to be accurate.

Martin observed that the surveyed line runs the length of a 50-foot long planter separating the two neighbors' properties. The planter contains approximately 15 mature cypress trees with multiple trunks 12 to 18 inches in diameter at the ground level. The planter is about five feet wide at the point closest to the street, and 10 feet wide at the opposite end. The tree closest to the street had been "topped."[3] He concluded "[e]ach of the tree trunks fall[s] entirely on the [neighbors'] side of the property line."

Bartlett also submitted a declaration from Jeff Paquette, the crew leader for the job, who had worked for Bartlett for 11 years, completed skill qualifications related to trimming and pruning trees, and evaluated roughly 10,000 trees to determine whether and how to prune them.

As to the row of cypress trees that divided the two driveways, Paquette indicated Bartlett trimmed the row and took the height of the trees down by three feet in the area where the driveway intersected with the road, to improve the line of sight for the neighbors when they exited their driveway.

With respect to the eucalyptus tree on Romero's property, Paquette confirmed he assessed it and concluded Bartlett could

surveyor or licensed civil engineer. (Bus. & Prof. Code, §§ 8762, 8763.)

[3] "Topping is the practice of cutting back large diameter branches of a mature tree to stubs." (Gov. Code, § 53067, subd. (a)(4).)

4

safely prune its dead or dying branches overhanging the neighbors' property without damaging the tree. He attested that Bartlett in fact pruned only dead or dying branches extending over the neighbors' property and did not cut or damage any portion of the tree located on Romero's property.

Paquette stated all Bartlett personnel remained entirely on the neighbors' property while conducting the pruning, except when he briefly stepped onto Romero's driveway to ensure no debris had fallen there.

Bartlett also provided a declaration from David Marren, Bartlett's Vice President of Safety and Regulatory Affairs, who stated Bartlett did not receive wood from the job and did not sell the trimmed branches; instead, Bartlett chipped the branches and paid a third party to take the debris. Marren further asserted the crew consisted of licensed specialists with extensive experience, with each crew member having evaluated thousands of trees for trimming and attended over 100 training seminars, including on pruning and stem removal.

C.    *Romero's Opposition to the Motion for Summary Judgment*

Romero did not conduct any written discovery or depose any witnesses after Bartlett filed its summary judgment motion. Romero filed his opposition to Bartlett's summary judgment motion three days late. His separate statement substantively responded to Bartlett's material facts, but it did not cite any supporting evidence for the disputed facts. He did, however, cite evidence in support of his own additional material facts.

1.    *Hughes declaration*

Romero proffered a declaration from Jeff Hughes, a licensed general, roofing, and lath and plaster contractor with a

5

forensic engineering firm who was certified as a residential and commercial building inspector. Hughes stated he had "worked for Architectural Design/Build firms and . . . worked with land surveyors," and stated he had "significant experience in evaluating . . . boundary lines."

Hughes inspected the two neighboring properties and took photographs and measurements, and he also reviewed Romero's pictures of the properties, a "Record of Survey of the subject properties," permit records, Marren's and Paquette's declarations, and the complaint and attached exhibits. He concluded that the cypress trees "are located on the boundary line separating the subject properties." He declared that he found a boundary surveyor monument at the curb which designates the property boundary and "observed that this marking corresponds to a line of discontinuity on the surface of the parkway between the two properties, which would indicate the dividing line. . . . Following that line back across the sidewalk, it neatly bisects the hedge of the trees, confirming the impression that the trees are right on the property line and constitute a common fence." Hughes stated the cypress trees were "composed of multi-trunks that are located on the separating boundary line" and the "majority of the hedge is entirely on Mr. Romero's property."

Hughes asserted that the cypress tree closest to the street had been "drastically reduced in height on both sides of the property line, such that the remaining stump of a tree . . . measured 31" (2'-7") in height." He opined such a drastic height reduction could not have occurred without someone trespassing on Romero's property. With respect to the eucalyptus tree, Hughes stated that Bartlett had removed several main branches of the eucalyptus tree that used to overhang the neighbors'

6

property, causing the tree to become "disfigured, denuded, and stressed."

The trial court sustained Bartlett's objections to all the above statements. The court agreed with Bartlett that Hughes did not lay a proper foundation to establish he qualified as an arborist expert or land surveyor expert, and instead demonstrated only that he had expertise pertaining to construction management and general contracting. The court agreed Hughes's opinion that the cypress trees were located on the boundary line was inadmissible due to the "lack of foundation, lack of personal knowledge, speculation, and improper opinion."

2. *Applegate declaration*

Romero also proffered a declaration from Greg Applegate, an "independent arboricultural consultant." Applegate has worked in landscape architecture since 1972 and has served as an arborist consultant since 1985. He is a certified arborist with the American Society of Consulting Arborists and the International Society of Arboriculture. He claimed to "have specific experience and expertise in evaluating the value, condition, safety and health of all types of trees commonly planted . . . in southern California residential neighborhoods," including cypress and eucalyptus trees. Applegate inspected the trees at issue in July 2021 (approximately five months after Bartlett trimmed them) and again in April 2023.

With respect to the cypress trees, Applegate observed that the row "appears to be on or near the property boundary." He opined that the drastic reduction of the tree closest to the street has "caused unsightly gaps and thin spots to become visible in the adjacent [cypress] trees that were not so drastically

shortened." The topping of that cypress tree in the front was "clearly outside accepted standards," and, "[a]lthough this particular tree has recovered more than expected, the resulting new growth is over the sidewalk and will probably need to be removed." "Assuming said [cypress] trees occupy both . . . [p]roperties, the alterations . . . have caused a reduction in privacy and a reduction in the value of the Romero Property."

As for the eucalyptus tree, Applegate opined that the type of trimming employed, which he referred to as "lion-tailing" and "heading cuts," "made the ends denser and more subject to breaking in high winds." Applegate opined that "the eucalyptus by the fence was pruned excessively, contrary to established standards (ANSI A300, part 1) and some cuts near the fence were over the property line, or affected foliage over the property line." The over trimming on the tree that overhung the neighbors' property "reduced the value of the eucalyptus tree, and consequently the Romero Property." However, Applegate stated that as of the 2023 inspection the eucalyptus tree "ha[d] recovered most of its foliage that was removed in 2021, but not in the same places."[4]

The trial court sustained objections to all these statements in Applegate's declaration. The court agreed that any opinions by

---

[4]    Applegate opined that another eucalyptus tree in Romero's yard had significantly declined, likely because its roots were fused with the tree trimmed by Bartlett. The trial court sustained an objection to this statement on relevance grounds because Romero did not make any allegations about a second eucalyptus tree in his complaint. Romero does not challenge that evidentiary ruling on appeal, and the issue is forfeited. (*Wiley v. Kern High School Dist.* (2024) 107 Cal.App.5th 765, 781 [failure to address an issue on appeal results in its forfeiture].)

8

Applegate to the effect that some cuts to the eucalyptus tree were on Romero's side of the property line were outside Applegate's area of expertise, lacked foundation, and were based on speculation as to where the property line was located. With respect to Applegate's opinion that Bartlett had excessively pruned branches overhanging the neighbors' property, causing irreparable harm to the tree and reducing the value of the tree and Romero's property as a whole, the court sustained Bartlett's objections that Applegate lacked personal knowledge because he did not know if the pruning cuts he observed were done by Bartlett, Applegate had not laid a proper foundation that he was qualified to offer an opinion on the reduction in value, and further, Applegate's opinion was equivocal as to the harm to the eucalyptus tree (and thus an improper expert opinion) because he admitted the tree regained its foliage by 2023.

### 3. *Romero declaration*

Romero submitted a declaration attaching a photograph with an added red line that, according to Romero, shows the boundary line between the two properties. He also attached a land survey he commissioned in 2015 that, according to Romero, showed that the cypress trees "stand nearly upon the dividing line and significant portions of their body and roots extend into each property." He asserted the hedges' location made him and his neighbors "coterminous owners" of the cypress hedge. He further stated that Bartlett's actions in hacking the cypress trees had damaged the hedge to the point that the trees were useless as a fence and damaged beyond repair. According to Romero, the drastic reduction in the height of the cypress closest to the street "could not have been achieved without a trespass across the property line onto my property."

9

Romero likewise stated Bartlett trespassed on his property to cut the eucalyptus tree. He stated, "Bartlett hacked the Eucalyptus tree to the point of completely stripping the tree of several branches and lush foliage, which affected its aesthetics and injured its health. Bartlett hacked not only the branches overhanging the [neighbors'] property but also branches located entirely on my property." Romero submitted photographs that he said were before and after pictures of the eucalyptus tree.

The trial court sustained Bartlett's objections to Romero's statements, concluding Romero was not an arborist expert and thus was not qualified to provide opinions on the pruning performed on the trees or the health of or damage to the trees. Further, Romero did not have personal knowledge of the actions taken by Bartlett because he was not present when the trimming occurred and had not laid any foundation in support of his speculative claim that Bartlett trespassed. The court excluded all of the photos on multiple grounds including lack of proper authentication and sustained the objection to the 2015 survey as misleading.[5]

---

[5] Romero also submitted a declaration from a real estate agent who stated she had compared before and after photographs of the eucalyptus tree and the cypress hedge and concluded the tree alterations diminished the value of Romero's property by approximately $250,000 "due to the reduced privacy and aesthetics caused by the excessive pruning." The trial court excluded the declaration in its entirety based on Bartlett's objections. In his opening brief, Romero lists as one of the issues presented for appeal whether the court erred in sustaining the objections to this declaration, but he otherwise does not address the issue. Accordingly, it is forfeited. (*Wiley v. Kern High School Dist.*, *supra*, 107 Cal.App.5th at p. 781; *Conservatorship of*

D. *The Trial Court's Order Granting Summary Judgment*

At the hearing on the motion for summary judgment, Romero's attorney stated his firm had experienced a technical issue and submitted the wrong draft of Romero's separate statement, omitting record citations. Counsel asked the court to consider the evidence in Romero's additional material facts portion of the separate statement, or, alternatively, to allow Romero five to 10 days to file a corrected separate statement.

At the conclusion of the hearing, the court adopted its tentative decision granting summary judgment. In its ruling the court noted Romero filed his opposition late and in his separate statement failed to cite evidence in support of disputed facts, rendering Bartlett's evidence uncontroverted. Further, as discussed, the court sustained almost all of Bartlett's evidentiary objections to Romero's evidence in support of his additional material facts.

The court concluded "the only admissible evidence is that the [c]ypress trees that Romero claims are partly on both properties are in fact entirely on the [neighbors'] property." The court also found Romero failed to proffer admissible evidence to dispute Bartlett's evidence that it only trimmed branches of the eucalyptus tree that overhung the neighbors' property. As a result, Romero's nuisance and negligence causes of action as to the cypress tree failed because Romero could not establish Bartlett breached a duty owed to Romero, and Romero's claim for conversion also failed. As for the eucalyptus tree, Romero had

*Tedesco* (2023) 91 Cal.App.5th 285, 302, fn. 20 [appellant forfeited issue by offering no authority or analysis].)

11

offered no admissible evidence of harm to the tree and thus could not satisfy the damages element of a negligence claim. The court concluded the cause of action for res ipsa loquitor negligence was not a standalone cause of action and in any event the doctrine was not implicated here where Romero had evidence that Bartlett had performed the pruning work at issue.

The court ruled Barlett "presented undisputed evidence that in the performance of trimming the [cypress] and [e]ucalyptus trees it did not step onto the Romero property." Romero therefore failed to present admissible evidence to dispute Bartlett's evidence that it did not trespass on Romero's property, which doomed his causes of action for trespass as well as wrongful cutting of trees.

The court found Romero failed to proffer admissible evidence that Bartlett took any wood belonging to Romero, and thus could not establish his causes of action for conversion or receiving stolen property. The court concluded the deficiencies in Romero's evidence also undermined his cause of action for recovery on a contractor's bond.

The court entered judgment for Bartlett, and Romero timely appealed.

## DISCUSSION

A. *The Court Did Not Err in Granting Bartlett's Motion for Summary Judgment*[6]

1. *Applicable law and standard of review*

   a. *Summary judgment*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subds. (c) & (f).) We review a summary judgment ruling de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) In so doing, we " 'liberally construe the evidence in

---

[6] Romero contends the trial court abused its discretion by disregarding his separate statement for lacking citations to supporting evidence and by denying his request for a continuance to file a corrected version. Bartlett responds that the court could have granted summary judgment solely because Romero filed his opposition late. Alternately, Bartlett argues the judgment should be affirmed because Romero's separate statement was procedurally deficient and followed "a history of abuse of pretrial procedures," citing to a lengthy procedural history in which the court sanctioned Romero at least five times. (See *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 98 [summary judgment may be proper on procedural grounds when preceded by abuse of pretrial procedures or willful violation of procedural rules].) We need not address these arguments. Although the court stated Bartlett's evidence was uncontroverted because of the deficiencies in Romero's separate statement, it also ruled on Bartlett's individual evidentiary objections and substantively examined each of Romero's causes of action.

support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Ibid.*)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Luebke*, at pp. 702-703.)  "The plaintiff must produce ' "s*ubstantial*" ' responsive evidence sufficient to establish a triable issue of fact. [Citation].  '[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.)  "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence."  (Code Civ. Proc., § 437c, subd. (c).)

b.     *Expert witnesses*

" '[A]n expert declaration is admissible to support or defeat summary judgment if the expert's testimony would be admissible at trial . . . .  An expert may testify to an opinion on a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." ' " (*Fernandez v.*

14

*Alexander* (2019) 31 Cal.App.5th 770, 779 (*Fernandez*); Evid. Code, § 801, subd. (a).)  "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."  (Evid. Code, § 720, subd. (a).) " '[T]he determinative issue in each case is whether the witness has sufficient skill or experience in the field so his testimony would be likely to assist the jury in the search for truth.' " (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115; accord, *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 313 ["The focus here is whether the medical expert witness has sufficient skill or experience in the field of medical practice involved in the malpractice claim, such that his testimony will assist the jury in the search for the truth."].)

" 'When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary.' "  (*Fernandez, supra*, 31 Cal.App.5th at p. 779; accord, *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761-762.) " 'The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed.  [Citation.]  This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration.  Only *admissible evidence* is liberally construed in deciding whether there is a triable issue.' "  (*Fernandez*, at p. 779.)

" 'The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed.' "  (*Alexander v. Scripps Memorial Hospital La Jolla*

(2018) 23 Cal.App.5th 206, 225.)  Thus, "[a]n 'expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact.  [Citation.]  Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' " (*Ibid.*; see *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155 [" 'when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an "expert opinion is worth no more than the reasons upon which it rests" ' "].)

Appellate courts are "split regarding the proper standard of review for the trial court's evidentiary rulings in connection with motions for summary judgment and summary adjudication." (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 ["we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"].)  Most courts " 'appl[y] an abuse of discretion standard' to evidentiary issues arising in the context of a summary judgment motion, except evidentiary rulings turning on questions of law, such as hearsay rulings, which are reviewed de novo." (*Dix v. Live Nation Entertainment, Inc.* (2020) 56 Cal.App.5th 590, 599, fn. 2; see *Huntsman-West Foundation v. Smith* (2024) 104 Cal.App.5th 1117, 1127-1128;

*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946 & fn. 3 [the "majority of courts . . . have held that the abuse of discretion standard applies"]; but see *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451, fn. 10 [applying de novo review of evidentiary rulings on a summary judgment motion].)  We need not decide which standard applies, because the result is the same under either a de novo or an abuse of discretion standard.

c.    *Relevant law as to tree ownership and duty of care*

The location of a tree's trunk determines ownership of the tree.  (See Civ. Code, §§ 833, 834.)  "Trees whose trunks stand wholly upon the land of one owner belong exclusively to him, although their roots grow into the land of another."  (Civ. Code, § 833; see *Marin Municipal Water Dist. v. Northwestern Pacific Railroad Company* (1967) 253 Cal.App.2d 83, 94, fn. 5.)  "Trees whose trunks stand partly on the land of two or more coterminous owners, belong to them in common."  (Civ. Code, § 834; see *Russell v. Man* (2020) 58 Cal.App.5th 530, 537; *Kallis v. Sones* (2012) 208 Cal.App.4th 1274, 1278.)  Where a tree trunk straddles two owners' neighboring properties, "neither owner 'is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree.' "  (*Kallis*, at p. 1278; accord, *Russell*, at p. 537; *Scarborough v. Woodill* (1907) 7 Cal.App. 39, 40.)  But "[a]bsent the property line passing through the tree trunk, it cannot be considered a 'line tree,' and thus it is not owned by the parties as tenants in common."  (*Alvarez v. Katz* (Vt. S.Ct. 2015) 124 A.3d 839, 843.)

"[T]o the extent that limbs or roots extend upon an adjoining landowner's property the latter may remove them, but

17

only to the boundary line." (*Bonde v. Bishop* (1952) 112 Cal.App.2d 1, 5; see *Grandona v. Lovdal* (1889) 78 Cal. 611, 618 ["the trees and the overhanging branches, in so far as they were on or over his land, belonged to the plaintiff, and he could have cut them off, or trimmed them, at his pleasure"]; *Grandona v. Lovdal* (1886) 70 Cal. 161, 162 [property owner may cut branches overhanging his property from a tree on another's property, " 'but he may not cut down the tree, neither can he cut the branches thereof beyond the extent to which they overhang his soil' "]; *Booska v. Patel* (1994) 24 Cal.App.4th 1786, 1790 (*Booska*).) In addition to trimming overhanging branches back to the property line, a property owner "may sue for damages and to abate the nuisance, but may not enter the other's land and cut down the trees. [Citations.] . . . [W]here such a landowner, without pursuing either of these remedies, commits a trespass and destroys the other's property he is liable for any resulting damage." (*Fick v. Nilson* (1950) 98 Cal.App.2d 683, 685.)

In addition, a landowner's right to remove overhanging branches of a tree belonging to his or her neighbor is "tempered by [the] duty to act reasonably." (*Booska*, *supra*, 24 Cal.App.4th at p. 1791.) In *Booska*, a property owner hired a contractor to excavate along the length of his yard and sever the encroaching roots of a pine tree that stood in his next-door neighbor's yard. (*Id.* at p. 1788.) The complaint alleged that the work was negligently performed and the neighbor had to remove the tree because it became unsafe and "unable to support life." (*Ibid.*) The appellate court rejected the property owner's contention that he had an absolute right to sever roots from his neighbor's tree that had spread to his yard, without regard to any injuries that cutting the roots would inflict on the tree. (*Id.* at p. 1788.)

18

Rather, the court held that the right to cut tree limbs or roots extending onto one's property is not absolute and may not be exercised in a negligent or malicious way that causes harm to a neighbor.  (*Id.* at pp. 1790-1792.)

> 2.	*Undisputed evidence demonstrates the neighbors owned the cypress trees because the trunks were located entirely on the neighbors' side of the property line*

Bartlett proffered evidence that the cypress trees belonged to the neighbors.  Bartlett presented a survey report from a registered civil engineer and licensed land surveyor.  " 'Surveyors and civil engineers, like other experts, may give testimony on questions involving matters of technical skill and experience with which they are peculiarly acquainted.' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 737-738.)  The surveyor declared that he first verified the location of the property line as recorded in the Record of Survey on file at the Los Angeles County Recorders' Office, and retraced the survey, finding it to be accurate and correct.  He then "verified the location of [the] topped tree and each of the other tree trunks along the property line."  After verifying these data points, the surveyor opined that "[e]ach of the tree trunks fall entirely on the [neighbors'] side of the property line."  The surveyor's opinion demonstrated he followed the accepted surveying methodology of retracing the footsteps of the original surveyor who made the record of survey. (*Id.* at p. 736 ["Under California law, the location of a disputed boundary line is proven by retracing, as nearly as possible based upon existing evidence, the footsteps of the original surveyor whose survey fixed the boundaries."].)

The court properly found Romero failed to offer admissible evidence to create a triable issue on whether the trees were partially his property. Although Hughes opined in his declaration that the cypress trees "are located on the boundary line," the trial court correctly sustained Bartlett's objections to this opinion on the ground that Hughes's declaration did not establish that Hughes had land survey expertise. (See Evid. Code, § 720, subd. (a); *Borrayo v. Avery*, *supra*, 2 Cal.App.5th at p. 313.) Although Hughes stated he had "worked with" land surveyors, his expertise was in residential and commercial contracting. Moreover, even assuming Hughes had expertise in this subject, he did not establish that he followed proper surveying principles to ascertain where the property line was and to determine the position of the tree trunks relative to that line. (See *Onglyza Product Cases* (2023) 90 Cal.App.5th 776, 785 [expert opinion properly excluded where not based on a reliable methodology]; *Sanchez v. Kern Emergency Medical Transportation Corp.*, *supra*, 8 Cal.App.5th at p. 155 [" 'purely conclusory' " opinions " 'unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion' " have no evidentiary value].) Romero has not established that Hughes' stated method of locating a boundary marker and then observing a "line of discontinuity" between the properties that appeared to line up with the marker is a reliable and accepted methodology for determining the location of a property line.

Romero's statements in his declaration about the location of the trees suffer from similar problems and were properly excluded by the court. His assertion that a 2015 survey showed the cypress hedge "[stood] nearly upon the dividing line" was

20

properly excluded on the basis that he is not an expert qualified to opine on the location of the property line, and in any event he did not state that any of the *trunks* straddled the property line.[7] As discussed, tree ownership turns on trunk location. (Civ. Code, § 833; see *Marin Municipal Water Dist. v. Northwestern Pacific Railroad Company*, *supra*, 253 Cal.App.2d at p. 94, fn. 5.) Romero's assertion that the cypress trees' foliage and roots extend into both properties is thus irrelevant to the issue of ownership of the trees. The court likewise did not err in excluding the photograph of the two properties that Romero had marked to purportedly show the property line in red. Although Romero argues he authenticated the photograph by declaring he "took this photograph on or about 2018," Bartlett properly challenged Romero's ability to authenticate that the red line added to the photograph actually depicts the property line.

Finally, the trial court properly excluded Applegate's statement in his declaration that the row of cypress trees "appears to be on or near the property boundary." Like Hughes and Romero, Applegate (an arborist) was not qualified to opine on the precise location of the boundary lines. Nor does Applegate demonstrate how he ascertained the location of the property line. (See *Fernandez*, *supra*, 31 Cal.App.5th at pp. 781-782 [an expert "offered no 'reasoned explanation connecting the factual predicates to the ultimate conclusion' [citation], and that is the very definition of a 'purely conclusory' opinion."].) Further, as discussed, a trunk's location "near" a property line does not affect the determination of ownership. Romero failed to raise a triable

---

[7] Romero does not challenge the trial court's ruling excluding the 2015 survey.

issue as to whether any of the trunks straddled the property line or were located on Romero's side of the boundary.

3. *Undisputed evidence demonstrates Romero owned the eucalyptus tree, but Bartlett trimmed only branches overhanging the neighbors' side of the property line*

It is undisputed that the trunk of the eucalyptus tree stood wholly on Romero's property. As such, Romero owned the tree. Bartlett proffered evidence from Paquette that it only cut branches of the eucalyptus tree that were hanging over the neighbors' property, and it did not cut or prune any portion of the tree that was on Romero's property.

Romero contends he proffered evidence that presents a genuine issue of material fact as to whether Bartlett limited its pruning to branches that overhung the neighbors' property. First, he relies on an opinion by Applegate, Romero's arborist, that some cuts to the eucalyptus tree "were over the property line, *or* affected foliage over the property line." (Italics added.) The trial court properly excluded this statement based on Bartlett's objection that Applegate was not a land surveyor and did not even state he reviewed a property survey, "meaning he does not actually know where the property line lies" and was speculating as to its location. (See *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 961-962 [an " ' "expert's opinion may not be based 'on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors' " ' "].)

Finally, Romero stated in his declaration that "Bartlett hacked not only the branches overhanging the [neighbors'] property but also branches located entirely on my property." However, the trial court properly determined Romero's statement

22

was not admissible because he lacked personal knowledge of where Bartlett had cut branches, having not been home when Bartlett did the job, and otherwise failed to demonstrate how he knew Bartlett trimmed branches located on his property.  (Evid. Code, § 702, subd. (a); see *Forest Lawn Memorial-Park Assn. v. Superior Court* (2021) 70 Cal.App.5th 1, 8 ["The testimony of a nonexpert witness 'concerning a particular matter is inadmissible unless he has personal knowledge of the matter.' "]; accord, *LAOSD Asbestos Cases*, *supra*, 87 Cal.App.5th at p. 947.)  For instance, he did not state that he observed cut marks on the tree that were on his side of the property line.  Romero failed to raise a triable issue of fact as to whether Bartlett cut any portion of the eucalyptus tree located on Romero's side of the boundary line.

4.      *Romero's causes of action for trespass, wrongful injury to trees, nuisance, receipt of stolen property, and conversion were properly dismissed because the cypress trees belonged to the neighbors and Bartlett trimmed only eucalyptus branches overhanging the neighbors' property*

Romero's causes of action for trespass, wrongful injury to trees, nuisance, receipt of stolen property, and conversion are dependent on his unsupported contentions that he had common ownership of the cypress trees because they were located on the property line, and that Bartlett cut parts of the eucalyptus tree located on Romero's side of the fence.  Because he did not raise a triable issue of fact on these points, summary adjudication in Bartlett's favor of these causes of action was proper.

Romero's cause of action for trespass requires the plaintiff to prove "(1) *the plaintiff's ownership or control of the property*; (2) the defendant's intentional, reckless, or negligent entry onto

23

the property; (3) lack of permission for the entry or acts in excess of permission; (4) *harm*; and (5) the defendant's conduct was a substantial factor in causing the harm.' " (*Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 90-91, italics added.) Cuts to trees that Romero did not own do not support liability for trespass to Romero. Without a showing that he had common ownership of the cypress trees and that Bartlett cut portions of the eucalyptus tree on his side of the property line, Romero can satisfy neither the "ownership or control" element nor the requirement that he prove he suffered damages to his property.

To the extent Romero suggests summary judgment on the trespass cause of action was not proper because Bartlett admitted Paquette briefly stepped onto Romero's driveway to see if any debris had fallen there during the trimming job, Romero is incorrect. First, in the trial court, Romero disclaimed any argument that Bartlett was liable for trespass based on Paquette's entering Romero's driveway for the purpose of cleaning up any debris. In his opposition to Bartlett's summary judgment motion, Romero stated, "Plaintiff is not suing Bartlett for the mere removal of debris." Rather, as the trial court properly found, Romero indicated the trespass claim was based on Bartlett's "cross[ing] over to Romero's side of the property line for the express purpose of cutting and mutilating trees that were [Romero's] property." Accordingly, Romero waived any argument that Bartlett is liable for its trespass to clean up debris that had fallen onto Romero's driveway. (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 ["[A]ppealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to

24

the trial court and the opposing litigants, to permit a change of theory on appeal." ' "]; see also *Magallanes DeValle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924.)

Trespass to property owned by Romero is also a required element for his wrongful injury to trees cause of action under Civil Code section 3346, which authorizes a suit for damages based on "wrongful injuries to timber, trees, or underwood *upon the land of another*, or removal thereof."  (Italics added; see *Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1111 ["any actionable harm [under Civ. Code § 3346] must involve or at least occur in connection with a 'trespass.' "]; *Russell v. Man*, *supra*, 58 Cal.App.5th at p. 536 [to be liable under Civ. Code § 3346 defendant must commit a "timber trespass" involving an intentional crossing of boundary lines into the land of another to injure timber].)

In addition, Romero's theory of nuisance liability hinged on his contention that "portions of the eucalyptus and [cypress tress] removed by Bartlett were [Romero's] property."  (See Civ. Code, § 3479; *Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 262-263 [to establish nuisance, a plaintiff must prove the defendant "interfere[d] with his use and enjoyment of his property"].)  His causes of action for conversion and buying or receiving stolen property under Penal Code section 496 also require that Bartlett have taken property (i.e., wood) that belonged to Romero.  (Pen. Code, § 496, subds. (a), (c); see *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240 [conversion is "the wrongful exercise of dominion over the property of another" and requires plaintiff to show ownership or right to possession of the property]; *People v. Brown* (2019) 32 Cal.App.5th 726, 733 ["The crime of receiving stolen property congeals . . . upon taking

25

possession of the property with knowledge that it is stolen."].) In sum, because Romero failed to present admissible evidence creating a triable issue as to whether Romero had common ownership of the cypress trees and whether Bartlett trimmed eucalyptus branches on Romero's property, summary adjudication was proper as to all the above causes of action.

Romero claims the cypress hedge "served the function of a fence," which "is a triable issue of fact that the trial court never addressed and is a question of fact for the jury to decide." However, a division fence must sit directly on the coterminous boundary. (See Civ. Code, § 841.) If the structure is entirely on one owner's land, it is not a division fence. (6 Miller & Starr, Cal. Real Estate (4th ed.) § 17:33 [citing *Ingwersen v. Barry* (1897) 118 Cal. 342, 343; *Western Granite & Marble Co. v. Knickerbocker* (1894) 103 Cal. 111, 116-117].) Because Romero failed to proffer admissible evidence to dispute that the cypress trunks were located solely on the neighbors' side of the property line, there is no basis to conclude the cypress hedge is a division fence. (See *Booska*, *supra*, 24 Cal.App.4th at p. 1792, fn. 4 ["boundary line trees are deemed to be jointly owned by the neighbors, while the tree with a trunk solely on the property of one belongs to that one"]; cf. Civ. Code, § 834 ["Trees whose trunks stand partly on the land of two or more coterminous owners, belong to them in common."].)

5.    *Romero failed to raise a triable issue of fact as to his negligence cause of action with respect to the eucalyptus tree*

Romero contends that even if only eucalyptus branches overhanging the neighbors' property were trimmed, a triable issue remains as to whether the trimming caused damage to the

26

tree as a whole. As discussed, where one cuts in a negligent or malicious manner overhanging branches or roots that extend from a tree on an adjoining property, one may be liable for "unreasonable injury to the interests of [one's] neighbor." (*Booska*, *supra*, 24 Cal.App.4th at pp. 1791-1792.) Romero asserts Bartlett negligently trimmed branches from Romero's eucalyptus tree, irreparably damaging the tree and making it more vulnerable to storm damage.[8]

>          a.      *Bartlett met its burden to show its trimming*
>                  *met the standard of care*

Bartlett met its initial burden to show Bartlett met the standard of care and was not negligent in trimming Romero's eucalyptus tree. Bartlett proffered evidence that its employees were qualified and performed the tree trimming according to industry standards. Marren reviewed the relevant employees' credentials and confirmed they were licensed tree specialists who had assessed thousands of trees and attended over 100 training seminars, including on pruning and stem removal. Paquette, the crew leader, had worked at Bartlett for 11 years, completed skill

---

[8]      Romero also asserted Bartlett trimmed the cypress trees in a manner that is "outside accepted standards." However, because Bartlett established the cypress trees were solely on the neighbors' property we need not address that argument because Bartlett owed no duty to Romero with respect to the cypress trees.

Romero also asserts triable issues remain as to whether Bartlett's negligent trimming of the eucalyptus tree harmed a second eucalyptus tree. However, as discussed, the trial court determined the issue of harm to a second eucalyptus tree was outside the scope of Romero's complaint, and Romero does not challenge that finding on appeal.

qualifications in trimming and pruning, attended more than 100 training seminars, and evaluated roughly 10,000 trees for pruning. He evaluated the eucalyptus tree before trimming and determined that only dead or dying branches overhanging the neighbors' property needed removal and "could be safely pruned without damaging the tree." He confirmed that Bartlett pruned only those branches and did not damage the eucalyptus tree.

> b. *Romero failed to raise a triable issue of fact that any portions of the eucalyptus tree on his property were damaged*

Romero failed to raise a material dispute as to whether Bartlett's trimming caused damage to the eucalyptus tree. While Hughes declared Bartlett's cuts left the eucalyptus tree "disfigured, denuded, and stressed," Hughes is a general contractor, not an arborist, and has no relevant qualifications for opining on a tree's condition. The trial court properly excluded that opinion as conclusory and lacking foundation. For the same reasons, the court also properly excluded Romero's opinion that Bartlett's trimming job harmed the tree's health.

Applegate, a licensed arborist, opined Bartlett's pruning was excessive and used improper methods—"lion-tailing" and "heading cuts"—that made the branches' "ends denser and more subject to breaking in high winds." He also asserted "the eucalyptus tree has been irreparably damaged due to overtrimming conducted on that part of the tree that appears to overhang the [neighbors'] property," reducing the value of the tree.

Even assuming the trial court improperly excluded these statements by Applegate, they do not create a triable issue of fact on Romero's negligence cause of action. As discussed, Romero

28

failed to proffer admissible evidence to dispute Bartlett's evidence that all of the cuts or removal of foliage from the eucalyptus tree occurred on the portions of the tree overhanging the neighbors' property. Thus, the trimming techniques that Applegate asserts fell below the standard of care and made the branches' ends denser affected only the areas that were trimmed. If the trimming caused the branch ends overhanging the neighbors' property to be more vulnerable to storm damage, that is harm that the neighbors, not Romero, would suffer.

Other than a conclusory and vague statement that the tree has been "irreparably harmed," Applegate does not specify any way in which the negligent trimming of the overhanging branches caused damage to the overall condition or health of the eucalyptus tree. (See *Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, 23 Cal.App.5th at p. 229 ["Without at least some minimal basis, explanation, or reasoning, [the expert's] conclusions as to causation in his . . . declaration had no evidentiary value"].) Moreover, Applegate acknowledged that by 2023 the eucalyptus tree had "recovered most of the foliage that was removed in 2021, but not in the same places." In short, Romero failed to offer admissible evidence showing Bartlett caused harm to Romero by trimming the overhanging branches of the eucalyptus tree. The trial court properly granted summary judgment on Romero's negligence claim.

6. *The trial court properly granted summary adjudication of Romero's "res ipsa loquitor" and contractor's bond causes of action*

The trial court also correctly dismissed Romero's cause of action for res ipsa loquitor, correctly noting it is not a cause of action but a "presumption affecting the burden of proof." (See

29

Evid. Code, § 646, subd. (b); *Gicking v. Kimberlin* (1985) 170 Cal.App.3d 73, 78 ["Res ipsa loquitur is a rule concerning the presentation of evidence; it is not an independent ground of liability."].)  In addition, without any showing of wrongdoing by Bartlett or conduct that harmed Romero's property, the court properly found Bartlett was entitled to summary adjudication on his cause of action for recovery on a contractor's bond.

B.     *Romero Has Not Established Prejudice from the Order Denying His Motion to Tax Costs*

Romero also appeals from the trial court's order denying his motion to tax Bartlett's litigation costs in the amount of $1,500.  Because Romero is separately obligated to pay that amount, he has not demonstrated he suffered any prejudice from its inclusion in the costs award.  Accordingly, we affirm the order.

1.     *Additional factual and procedural background*

On September 1, 2021, the trial court ordered Romero to pay Bartlett $1,500 in sanctions to compensate Bartlett for the attorney fees it incurred in opposing a meritless motion to compel filed by Romero.  Bartlett later requested the court issue an order to show cause why Romero should not be held in contempt for failing to pay the sanctions.  After the matter was transferred to a different department, the court declined to find Romero in contempt of court because "the unsigned September 1, 2021 minute order's silence on a date for Romero's performance creates uncertainty, vagueness, and ambiguity fatal to finding contempt."

After Bartlett prevailed on summary judgment, it filed a memorandum of costs that included the still-unpaid $1,500 sanctions award.  Romero moved to tax costs, arguing in pertinent part that Bartlett had not prevailed on its contempt

30

motion and that the sanction issue had already been adjudicated. He also asserted the sanction was "improper to request as part of a [memorandum of costs]" because the "item [was] not statutorily authorized."

The trial court denied Romero's motion to tax costs. The court stated, "Romero's argument that th[e] order [denying Bartlett's request for an order to show cause] means the sanction somehow went away, or was resolved against Bartlett at this hearing, is without merit." The court further stated, "Discovery sanctions are immediately enforceable as a judgment. *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 610. While Bartlett could have attempted collection via that route, it is not improper to add this item as a cost. Under Code of Civil Procedure section 1033.5(c)(4), the Court in its discretion allows this cost."[9] Romero timely appealed.

2.    *Romero has not shown prejudice from the court's award of costs*

Generally, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding" (Code Civ. Proc., § 1032), including "a defendant in whose favor a dismissal is entered" (*id.*, subd. (a)(4)). " ' "[C]osts" of a civil action consist of the expenses of litigation. . . . The right to recover any of such costs is determined entirely by statute.' " (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1148; *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 832; see Code Civ.

---

[9]    Code of Civil Procedure section 1033.5, subdivision (c)(4), provides that cost items not specifically mentioned as allowable or unallowable in section 1033.5 "may be allowed or denied in the court's discretion."

31

Proc., § 1033.5, subds. (a) & (b) [listing allowable and not allowable costs].)

We generally review the denial of a motion to tax costs for abuse of discretion. (*Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1013; Code Civ. Proc., § 1032, subd. (a)(4).) " 'The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision.' " (*Coastline*, at p. 1013.) " ' "However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of . . . costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; accord, *Berkeley Cement, Inc. v. Regents of University of California* (2019) 30 Cal.App.5th 1133, 1139; *Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576 ["Whether a cost is statutorily authorized is a question of law we review de novo."].)

Romero contends a "monetary discovery sanction is not within the meaning of 'costs' " under [Code of Civil Procedure] section 1033.5. We need not address the merits of his contention, however, because even assuming the court erred in including the sanctions award in the cost award, Romero has not shown prejudice. An appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13; *TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786.) In his briefs on appeal Romero does not dispute Bartlett's contention that no matter whether we strike the $1,500 from the cost award, he is obligated to pay the $1,500 sanction pursuant to the trial court's September 1, 2021 order. Because Romero fails to identify

any actual prejudice from the obligation to pay $1,500 being repeated in the costs order, we affirm the order.

## DISPOSITION

The judgment and the order denying Romero's motion to tax costs are both affirmed.  Bartlett is to recover its costs on appeal.


          STONE, J.

We concur:


MARTINEZ, P. J.


FEUER, J.